Tyler *v.* Winslow.

*Blake & Garnsey,* for defendant, contended that the evidence offered by the defendant and ruled out by the Court, was properly admissible, and cited *Marriott* v. *Hampton,* 7 Term R. 268; *Holmes* v. *Aery,* 12 Mass. 136; *Jordan* v. *Phelps,* 3 Cush. 545.

———————◆———————

WILLIAM H. TYLER *versus* WILLIAM H. WINSLOW.

The statute which authorizes an officer attaching property of a debtor, to permit such property to go back into the hands of the debtor, upon taking a receipt for the same, contemplates, or, at least, does not prohibit a reasonable use of the property by the debtor.

The debtor himself, in such case, being the receipter, and having agreed to keep the property for such compensation as the officer might deem just and reasonable, is at liberty to charge the officer the full amount which he himself has charged upon the writ as part of his fees and expenses, for the same service, without deduction on account of loss by the debtor of a portion of the property, especially when it does not appear that the creditor has made any claim on the officer for such loss.

Nor is the liability of the officer to the debtor, to pay such compensation, affected by the fact that the property had, previous to the service of the trustee process, been mortgaged by the debtor, and that the attaching creditor had compromised with the mortgagee, nor by the circumstance that the officer was a "public officer," under the statute of 1841, c. 119, § 63, and R. S., c. 86, § 55.

An attachment by trustee process is not dissolved by the death of the principal debtor and the issue of a commission of insolvency on his estate, if, before the death of the debtor, the plaintiff issues his execution, and duly demands of the trustee to pay over an amount sufficient to satisfy the same,

although, subsequent to such demand and the death of the principal defendant, *scire facias* issued and further disclosure was made thereon.

The trustee having been charged on *scire facias* for a sum greater than the amount of the judgment against the original debtor, that sum is reduced, so as to cover only the amount of the judgment, with legal interest and costs.

SCIRE FACIAS against the defendant, as trustee of Samuel J. Foster.

The facts, contained in the several disclosures of the trustee and other papers, and agreed by the parties, are very fully stated in the opinion of the Court.

*J. Granger,* for defendant, argued that,—

1. The principal defendant was accountable to the trustee for loss on the property attached, by reason of his negligence in keeping, and improper use of the same.

2. That the property attached having been mortgaged to Howe before the attachment by the defendant for Sawyer, and Sawyer having been obliged to pay Stone for it, it would be grossly unjust that Foster should have the benefit of keeping the stock through Howe, and have pay for it from Sawyer, through the defendant.

3. That the case came within the third exception of c. 119, § 63, of the statute of 1841. That the defendant was acting as a public officer; he had attached the stock, and was bound to provide for its safe keeping. That the same construction was given to the old statute, before this express provision for exonerating public officers was enacted. *Chesley & al.* v. *Brown & trustee; Thompson* v. *Brown,* 17 Pick. 462, and cases there cited.

4. That the death of the principal defendant and the insolvency of his estate, operated necessarily to dissolve the attachment. R. S., 1857, c. 81, § § 79, 80, 81, 82.

*B. Bradbury,* for plaintiff.

The opinion of the Court was drawn up by

MAY, J.—The defendant made his disclosure in the original action, at the September term, 1856, and was charged as the

trustee of the principal defendant. *Scire facias* having been sued out, he was permitted at the March term, 1858, to be examined anew, and to prove any matters proper for his defence thereto. The question of his liability is to be determined by the state of facts existing at the time of the service of the original writ upon him, unless some fact has since occurred which may legally operate as a discharge therefrom.

Our first inquiry, then, is whether, upon the disclosures in this and the original suit, and such other facts as were proved or admitted in the case, the defendant had, at the time of said service, any goods, effects or credits in his hands or possession belonging to the principal defendant. That he was properly charged upon the first disclosure is not denied. The new examination upon *scire facias*, has very much modified the facts as at first presented.

The defendant, if liable at all, was liable to be charged only for the balance due upon the contract between him and the principal debtor, for keeping a large number of cattle and horses, which the defendant, as sheriff, had attached upon a writ in favor of one Sawyer, against said debtor. The attachment was made November 28th, 1855. The price to be paid under said contract was $13,50 per day, from the day of the date of the attachment, so long as the cattle and horses should be kept up and fed on hay, or until said attachment should be dissolved. The payments were to be made monthly, and certain hay, attached upon the same writ, if used by the debtor, was to be allowed in part payment, at $8,00 per ton. The property was kept by the debtor until June 25th, 1856.

The time of the service of the trustee writ upon this defendant does not appear from the papers in the case, but his counsel states, in his argument, that it was made May 7, 1856. This was 160 days after the attachment, and the cattle and horses must have been kept up and fed upon hay during this time, because it appears, from the last disclosure, that the defendant charged upon the writ, *Sawyer* v. *Foster*, for keeping them 161 days, at $13,50 per day. The keeping, according

to the terms of the written contract, had amounted, at the time of the service upon the defendant, to $2160; of which it appears that $1620,04 had, in some way, been previously paid, thus leaving a balance then due from this defendant to the principal debtor of the sum of $539,96. For this sum the debtor might have had his action; and the defendant is therefore properly chargeable for that amount, unless the same is reduced or cancelled by some of the other facts stated in the case, or he is in some way discharged therefrom.

Various grounds are taken in defence. The first is, that the debtor worked the horses and some of the cattle, during the time he was keeping them under said contract, and greatly diminished their value thereby; and, further, that some of the horses were lost. If they were his property, he might, perhaps, reasonably use them during the attachment. There was nothing in the contract to restrain such use. If, however, either the cattle or horses were lost or diminished in value, through the negligence or fault of the debtor, he would have been liable therefor upon his contract. He was bound to use ordinary care. Whether he did so or not does not distinctly appear. His contract is evidently in the nature of a receipt. The statute which authorized the defendant to permit such property to go back into the hands of the debtor, upon taking a receipt, without dissolving the attachment, we think, contemplates, or at least does not prohibit, a reasonable use of the property by the debtor. Under our laws, where the action in which the attachment is made may be pending several years, a construction of the statute which should prevent such use by the debtor would be hard and oppressive upon him. R. S. of 1841, c. 114, § 37. It has been held in this State that a receipter for a horse attached is not liable for its value, where it dies in his hands, without his fault, before a demand. *Shaw* v. *Laughton,* 20 Maine, 266.

But it further appears in this case that the defendant, having ascertained that the property was being used, called upon the debtor in February after the attachment, and made a new agreement, by which the terms of the original contract were

entirely changed, and the price to be paid for the keeping was to be such as the defendant might deem to be just and equitable under all the circumstances. No settlement having been made between the parties, the defendant charged upon the writ, as a part of his fees and expenses, the full price agreed to be paid by the terms of the original contract. This charge was one which fell upon the debtor to pay, and which, in fact, was paid out of the avails of the property attached. Under such circumstances, we do not think it lies in the mouth of the defendant to say that any deduction should now be made by reason of the use or loss of the property, or the modification of the contract as aforesaid. It would be manifestly unjust to charge the debtor with the contract price, upon the writ against him, and to take that price out of the avails of the property, and then, upon settlement, to allow him a much smaller sum. It does not appear that the creditor has made any claim upon the defendant for any injury to, or loss of the property attached; and, if he should do so, the defendant's remedy for indemnity is by an action upon his contract, so far as such injury or loss was occasioned by the fault of the debtor. The defendant having been paid to the full extent of the original contract price, by the debtor, no deduction can properly be allowed him, in this action, for uncertain damages which may or may not be hereafter claimed by the creditor, for injuries to, or loss of the property. He is properly to be regarded, under the circumstances of the case, as indebted to the principal debtor, at the time of the service of the trustee writ upon him, for the amount then due, according to the terms of the original contract.

It is further urged that the defendant ought to be discharged because the property attached was not the property of the principal debtor, but belonged to one Howe, as mortgagee of said debtor, by whom the defendant has been sued for it, which suit was compromised upon the payment of $1350 by the attaching creditor. It is not perceived how these facts can possibly affect the contract between the defendant and the debtor. The obligation to pay for the keeping of the cattle

and horses did not depend upon the state of the title, but upon the contract and the fact that they were kept. The circumstance that the debtor was the mortgager of the property, in no way changed the nature or efficacy of the contract. In the absence of all fraud in the making of the contract, both parties were bound by it; the one to keep the property, and the other to pay for such keeping, if kept.

Again, it is objected in defence, that the defendant, even if indebted to the principal defendant, cannot legally be charged as his trustee, because, as is alleged, he was a public officer, and therefore exonerated from this process by the third clause of section 63, chapter 119, of the Revised Statutes of 1841, and section 55, chapter 86, of the revision of 1857. These statutes were evidently intended to apply only to money or other things coming into the hands of a public officer in such manner that the same should be regarded as being, in some sense, within the custody of the law. They in terms apply only to cases of official accountability. They were not intended to apply to cases of personal indebtedness on the part of such officers, arising from their contracts with third persons, even though such contracts were made in connection with the performance of their official duties. Such a construction would exonerate a public officer from this process where his indebtment arose from the hiring of a horse to be used in the service or execution of a civil process. It is wholly inadmissible.

It is next contended that this action cannot be maintained, because the original attachment was dissolved by the death of the principal debtor prior to the commencement of this suit; and a commission of insolvency of his estate was issued within one year next after his death. It is provided by the R. S. of 1841, c. 114, § 83, and the same in substance by those of 1857, c. 81, § 77, that "when any estate or goods and chattels are attached, and the debtor dies before they are taken in execution, the attachment shall remain in full force, in like manner as if the defendant were alive, unless the estate of the deceased shall be represented, by his executors or admin-

istrators, as insolvent; and a commission of insolvency shall thereupon issue within one year next after the defendant's death." Substantially the same provision was contained in the statutes of 1821, c. 60, § 32. These statutes have been held to apply alike to all property, whether attached in the ordinary mode or by foreign attachment. They apply as well to money due to the debtor as to his visible goods. *Martin* v. *Abbott,* 1 Greenl. 333; *Grovesner* v. *Gold,* 9 Mass. 209; *Franklin Bank* v. *Bachelder,* 23 Maine, 60. Where the property attached has been taken on execution before the death of the debtor, the officer may proceed to dispose of the same according to law, in the same manner as if the debtor were living.

In the case before us, the debt for which the defendant was charged was not literally taken in execution before the death of the debtor, but we think it may fairly be considered as having been constructively so taken. After the recovery of his judgment, and while the debtor was living, the creditor appears to have done all that could be done to avail himself of it. The only reason why it was not actually appropriated to the payment of his execution was the fault of the defendant in the non-performance of his legal duty. The plaintiff had sued out his execution, and, within thirty days after judgment, had caused a legal demand to be made upon this defendant to pay over an amount sufficient to satisfy the same. This he refused or neglected to do, and thereby rendered his own goods and estate liable for such an amount as he might be properly charged for in this suit. R. S. of 1857, c. 86, § 67.

That the right of the creditor to the fund in the hands of the trustee had become absolute, and the liability of this defendant unconditionally fixed by the judgment, execution, and demand thereon, in the lifetime of the debtor, cannot well be doubted. The subsequent proceedings on the *scire facias* were proper to ascertain the extent of that fund; but neither these, nor the death and insolvency of the debtor, after the demand, ought to have any effect in discharging the defend-

Tyler *v.* Winslow.

ant from the payment of the debt due from him to the principal defendant at the time of the service of the trustee writ upon him. This rule is not only in accordance with the principles of right and justice, but will be found to be in harmony with the analogies of the law in cases somewhat similar to this.

In the case of the *Franklin Bank* v. *Bachelder*, before cited, which was a case in which the same steps had been taken to charge the defendant and to fix his liability, as in this, and where the principal defendants were judicially declared to be bankrupts, after the demand upon the execution had been made upon the defendant as trustee, and where they subsequently obtained their respective certificates of discharge as bankrupts, which were pleaded in bar of the plaintiffs' suit, it was held that these facts constituted no defence to the plaintiffs' right to recover in that action, which was *scire facias*, the value of the goods, effects, and credits of the principal defendants in the hands of the trustee, when service was made upon him. The refusal of the defendant to pay or deliver, upon demand, the property in his hands, vested an immediate right of action in the plaintiff to recover therefor, of which he could not be deprived by subsequent events. So far as the plaintiff and trustee were concerned, the recovery of a judgment, the issuing of an execution, and a seasonable demand of the property upon it, were equivalent to a seizure of the property, so far as to make the defendant, after his refusal to deliver it, responsible for its value. The right of the plaintiff to recover its value became absolute after such demand and refusal.

It has also been held, in an action against a receiptor, for property attached, that the death of the debtor, after judgment, execution, and a seasonable demand, affords no ground of defence. Such demand is constructively a seizure of the property attached for the preservation of the plaintiff's rights, and subjects the receiptor to an action for the value of the property, which may be maintained notwithstanding the subsequent bankruptcy and death of the debtor. *Farnham* v.

*Gilman,* 24 Maine, 250. So, too, in the case of the death and insolvency of the debtor. *Hapgood* v. *Fisher,* 30 Maine, 502. In this last case, the opinion of the Court, as drawn by TENNEY, J., concludes as follows:—" The defendants, by failing to deliver the property, as they had agreed to do, are to be considered as appropriating it to their own use, and they cannot avail themselves of events which occurred after their liability was fixed, in justification or excuse of the omission to redeliver the property, which was at the time unauthorized." These cases are so strongly analogous to the one before us, that no reason is perceived why the same rule is not alike applicable to both.

The result is, that the exceptions must be overruled. There is, however, a clerical error in the amount for which the defendant is to be charged. The amount of the plaintiff's judgment against the original debtor, was only $239,23 debt, and $11,42 costs of suit. It was recovered at the March term, 1857. The defendant's liability in this suit cannot exceed the amount of that judgment, with legal interest and costs. The amount, therefore, for which he was charged, in this action at *Nisi Prius,* being $542,44, as is stated in the bill of exceptions, must be reduced so as to cover only the plaintiff's judgment for debt, interest and costs, as before stated.

TENNEY, C. J., and APPLETON, CUTTING, DAVIS, and KENT, J. J., concurred.